**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Lyons, et al., | No. CV-20-00866-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| William Clancy, et al., | |
| Defendants. | |

Plaintiffs Paul and Marilyn Lyons move for default judgment against Defendants William and Judith Clancy, Jere Clancy, Ole Gray Mare, LLC ("Ole Gray Mare"), and Clancy Company PLLC fka Clancy and Co. PLLC ("Clancy Company") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 55(b)(2). (Doc. 15.) Defendants have not appeared or filed any responses. For the reasons discussed below, the application for default judgment is granted to the extent that Plaintiffs are awarded $126,620 in compensatory damages and $50,000 in punitive damages.

**I.  FACTUAL BACKGROUND**

Plaintiffs filed the Complaint on May 4, 2020. (Doc. 1.) It alleges claims for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, consumer fraud, fraud, civil conspiracy, aiding and abetting, a civil RICO violation, alter ego, breach of fiduciary duty, and collective trust. (*Id*. at 4–15.)

All facts alleged in the Complaint (except as to damages) are assumed to be true. *See Geddes v. United Fin. Grp*., 559 F.2d 557, 560 (9th Cir. 1977). Plaintiffs Paul and

Marilyn Lyons are a retired couple residing in Maricopa County, Arizona. Mr. Lyons inherited $160,000 in the spring of 2018. (Doc. 1 ¶ 11.) Plaintiffs had previously retained Defendants William Clancy and the Clancy Company to provide personal and business accounting services. (*Id*. ¶ 7.) Upon learning of the inheritance, William Clancy solicited his "investment consulting" services to Mr. Lyons. (*Id*. ¶ 7.) Specifically, he advised Mr. Lyons that a strip center at which his son, Defendant Jere Clancy, owned a business, was for sale and would be a good investment. (*Id*.; Doc. 19 at 10 ¶ 1.) William Clancy offered to invest and manage the purported investment in exchange for a fee of 10% of all rental income from the strip center, as well as 10% of proceeds from any future sale. (*Id*. ¶ 12.) He also represented that this fee would include "accounting, tax preparation and other related work to manage the investment." (*Id*. ¶ 13.)

In or about June 2018, Mr. Lyons retained the services of William Clancy and Clancy Company LLC to invest in the strip center and to manage the investment. (*Id*. ¶ 14; Doc. 19 at 10–11 ¶ 2.) The parties entered into an Investment Service Agreement, pursuant to which Mr. Lyons delivered his $160,000 inheritance in the form of cashier's checks, before requesting and receiving $30,000 back. (*Id*. ¶ 15.) On Plaintiffs' information and belief, William Clancy and the Clancy Company then deposited Plaintiffs' funds into the bank account of Defendant Ole Gray Mare, owned and managed by William Clancy's wife, Judith. (*Id*. ¶ 16.)

William Clancy later informed Mr. Lyons that negotiations for the strip center purchase were at an "impasse." As a result, he recommended that Mr. Lyons invest his inheritance differently. Mr. Lyons "rejected the idea," and made clear that he was only interested in investing the funds in "income producing commercial real estate." (*Id*. ¶ 17.)

In or about October 2018, Mr. Lyons was "shocked" to discover that William Clancy, through Ole Gray Mare, used his inheritance funds to purchase a condominium for his son, Jere; to purchase inventory for his wife, Judith's, fabric store; and to pay off a $70,000 second mortgage on his home. (*Id*. ¶ 18.) Plaintiffs were "devastated" to learn that Defendants had "absconded" with the inheritance because they are, as Defendants knew,

retired and were "counting" on living off of the inheritance. (Doc. 19 at 11 ¶ 5.) Mr. Lyons demanded that the funds be returned, but Defendants refused. (*Id*. ¶¶ 19–20.) William Clancy eventually offered to make $1,000 monthly payments back to Mr. Lyons, which was formalized in a Repayment Agreement. Defendants made these $1,000 payments until October 25, 2019, but have since stopped payments. (*Id.* ¶ 22.) Despite Plaintiffs' demands, Defendants have refused to pay back the remaining inheritance balance. (*Id.* ¶ 23.)

All defendants were timely served with the Summons and Complaint. (Docs. 8–12.) Defendants have failed to file an answer, a motion to dismiss, or any other response. Upon Plaintiffs' application (Doc. 13), the Clerk of the Court entered default against each defendant. (Doc. 14.) Plaintiffs subsequently filed the pending motion for default judgment. (Doc. 15.) No responses have been filed. The Court also required supplemental briefing regarding jurisdictional issues, which Plaintiffs provided. (Doc. 16, 17.) The Court also required a default damages brief "advising the Court whether they intend to prove damages by live witnesses or affidavits"; assessing "the factors addressed in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)"; and "proposed form of judgment, which includes the exact amount of damages Plaintiffs are seeking under each theory of damages." (Doc. 18.) Plaintiffs filed their default judgment brief and proposed form of judgment on December 17, 2020. (Docs. 19, 20.)

## II.     LEGAL STANDARD

Once a default has been entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider several factors, including (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy favoring a decision on the merits. *See Eitel*, 782 F.2d at 1471–72. In applying the *Eitel* factors, the factual allegations of a complaint, apart from damages, are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The moving party has the burden to

prove all damages. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### III. DISCUSSION

Before assessing the merits of Plaintiffs' motion for default judgment, the Court must confirm that it has subject-matter jurisdiction over the case and personal jurisdiction over Defendants. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). The Court will first analyze whether it has jurisdiction, before turning to the merits of Plaintiffs' motion.

#### A. Subject-Matter Jurisdiction

Plaintiffs assert that diversity jurisdiction exists in this case. Diversity jurisdiction requires complete diversity of the parties and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332. Federal Rule of Civil Procedure 8(a)(1) requires a federal plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction" in the complaint because a "party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (citation omitted).

Here, the Complaint asserts that Plaintiffs reside in Maricopa County, Arizona; William and Judith Clancy reside in Mercer County, Kentucky;[1] Jere and Jane Doe Clancy reside in Fayette County, Kentucky; the Clancy Company is "an Arizona professional limited liability company . . . registered and authorized to business in Kentucky"; and Ole Gray Mare is a "Kentucky limited liability company and Defendant Judith Clancy is its sole member and manager." (Doc. 1 ¶¶ 2–6.) As "an LLC is a citizen of every state of which its owners/members are citizens," the Court required Plaintiffs to address the

---

[1] The Complaint also notes that William and Judith Clancy "were residents of Maricopa County, Arizona" before moving to Kentucky. (*Id.* ¶ 2.) But "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (citing *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)).

- 4 -

citizenship of the Clancy Company's members in supplemental briefing. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); (Doc. 16). Plaintiffs' supplemental briefing asserts that Judith Clancy is the sole member and manager of the Clancy Company. (Doc. 17 at 4.) Plaintiffs also attach the company's annual report demonstrating as much. The Court is satisfied that diversity of citizenship exists in this case.

Plaintiffs also assert that the amount in dispute exceeds $75,000 because they seek to recoup at least $130,000 from Defendants. (Doc. 1 at 2, 15.) Accordingly, the Court finds that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

### B. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Arizona's long-arm statute conforms with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a); *see also A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569 (1995) The analyses of personal jurisdiction under Arizona law and federal due process are, therefore, the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

For an exercise of personal jurisdiction to comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g., Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Plaintiffs do not argue that general jurisdiction applies in this case.

Accordingly, the Court must determine whether Defendants are subject to specific jurisdiction. The Ninth Circuit uses a three-part test to analyze specific jurisdiction, which exists if all three parts are satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the plaintiff to show the first two prongs, but then shifts to the defendant to show the third. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). Jurisdiction may be established with a lesser showing of minimum contacts "if considerations of reasonableness dictate." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).

  The first element of specific jurisdiction, "purposeful direction," is measured using the "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). See *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The effects test requires the defendant to "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citations omitted). Plaintiffs assert that Defendant William Clancy, on behalf of himself, his marital estate, and as an agent of the Clancy Company and Ole Gray Mare, purposefully contacted Mr. Lyons to solicit investment services. (Doc. 17 at 8.) They state that the "series of phone calls and electronic communications . . . to induce [Plaintiffs] to send inheritance money to Defendants" were expressly aimed at Arizona and intended to cause harm in Arizona. (*Id.* at 8.) The first element is met.

  The second prong requires a claim "which arises out of or relates to the defendant's forum-related activities." *Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). Plaintiffs assert that their claims are all directly related to

Defendants' "numerous and direct contacts" with Arizona. (Doc. 17 at 10.) As examples, Plaintiffs state that William Clancy "directly solicited" them for "offers to provide investment services, negotiations for such services and the agreement for repayment of the inheritance." (*Id*.) William Clancy also "made numerous calls" to communicate information regarding the purported investment "in order to further Defendants' fraudulent scheme." (*Id*.) And William and Judith Clancy also misappropriated the inheritance by purchasing a condominium for their son, Jere, "using Ole Gray Mare." (*Id*.) The Court finds that the second element is also met.

Lastly, the exercise of jurisdiction should be "reasonable." *Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). Although the burden shifts to Defendants to demonstrate that jurisdiction is not reasonable, Plaintiffs address this requirement, asserting factors including that Defendants purposefully interjected themselves into Arizona; that the burden of litigating would not be substantially greater on Defendants in Arizona than in Kentucky; that Arizona has a strong interest in adjudicating the present dispute; and that Plaintiffs, "thanks to Defendants, have limited financial resources." (Doc. 17 at 12.) For all of these reasons, the Court finds that Plaintiffs have demonstrated that jurisdiction is proper in this District.

### C. Default Judgment

The Court now turns to the merits of Plaintiffs' application for default judgment. Plaintiffs have provided supplemental briefing and a declaration of Mr. Lyons in support of the motion.[2] (Docs. 17, 19.)

#### 1. The first, fifth, sixth, and seventh *Eitel* factors

In a case such as this, where the defendants have not participated in the litigation, the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020). The first factor weighs in favor of

---

[2] Because Mr. Lyons has submitted a declaration attesting to his damages, a hearing is not necessary. (Doc. 19 at 10–13.); *J & J Sports Prods., Inc. v. Meza Jimenez*, No. CV-17-1320-PHX-DGC, 2018 WL 317288, at *3 (D. Ariz. Jan. 8, 2018) ("A default judgment may be entered without a hearing on damages when the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.").

default judgment because denying Plaintiffs' application will leave them "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor is satisfied. Because all well-pleaded facts in the Complaint are taken as true, there is no "genuine dispute of material facts" that would preclude granting the motions. *Id.* Similarly, the sixth factor is satisfied; because Defendants were properly served, it is unlikely that their failure to answer was a result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006). And while generally the seventh *Eitel* factor weighs against default judgement, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. The Court finds that this factor is not sufficient to preclude the entry of default judgment.

### 2. The second and third *Eitel* factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). The Court addresses Plaintiffs' claims in turn.[3]

#### a. Breach of Contract

Plaintiffs allege breach of contract against William and Judith Clancy and the Clancy Company. A breach of contract claim requires "a contract, a breach of contract, and damages." *Best Western Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 988 (D. Ariz. 2007) (citing *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)). Mr. Lyons, William Clancy, and the Clancy Company entered into an Investment Service Agreement. (Doc. 1 ¶ 25.) Mr. Lyons performed his obligations under the Investment Services Agreement, but these defendants breached it by spending Mr. Lyons's inheritance funds in an impermissible manner. (*Id.* ¶¶ 26–28.) Mr. Lyons, William Clancy, and the Clancy Company also entered into a Repayment Agreement governing the repayment of Mr. Lyons's inheritance funds. (*Id.*

---

[3] Plaintiffs bring twelve claims. (Doc. 1 at 4–15.) The Court only addresses those claims for which Plaintiffs seek damages.

¶ 33.) Mr. Lyons performed his obligations under the Repayment Agreement, but William Clancy and the Clancy Company breached it by failing to make the agreed-upon payments. (*Id.* ¶ 34.) As a result of these breaches, the Complaint states that Plaintiffs have suffered damages in an amount not less than $130,000 plus interest, lost profits, and other consequential damages. (*Id.* ¶ 30.)

Based on the facts described in the Complaint, Plaintiffs have pled a prima facie claim for breach of the Investment Service Agreement and the Repayment Agreement.

### b. Breach of Fiduciary Duty

Plaintiffs also assert a claim of breach of fiduciary duty against Defendant Ole Grey Mare. Under Arizona law, establishing a fiduciary duty requires "either peculiar intimacy or an express agreement to serve as a fiduciary." *Cook v. Orkin Exterminating Co., Inc.*, 227 Ariz. 331, 334, ¶ 15, 258 P.3d 149, 152 (App. 2011). A breach of fiduciary duty claim may be brought in the absence of a valid contract between the parties to the dispute. *See Sports Imaging of Arizona, L.L.C. v.1993 CKC Tr.*, No. 1 CA-CV 05-0205, 2008 WL 4448063, at *22 (Ariz. Ct. App. Sept. 30, 2008).

The Complaint asserts that Ole Gray Mare owed a fiduciary duty to Plaintiffs as the bailor of its funds. It breached these fiduciary duties by misappropriating Plaintiffs' inheritance funds for its own personal benefit, and "also lied, mislead, and concealed material information from [Mr. Lyons] on multiple occasions." (Doc. 1 ¶ 94–96.) The Court finds, without concluding that Ole Gray Mare did in fact owe a fiduciary duty to Plaintiffs, that the Complaint sufficiently alleges a prima facie claim of breach of fiduciary duty against Ole Gray Mare.

### c. Fraud and Consumer Fraud

Plaintiffs assert claims of fraud and consumer fraud against Defendants William and Judith Clancy and the Clancy Company.

As to the fraud claim, under Arizona law, a "showing of fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the

manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500 (1982). Plaintiffs allege that William Clancy, on behalf of Judith Clancy and the Clancy Company, made false representation regarding their investment, which was a material term of the Investment Service Agreement. (Doc. 1 ¶ 59–60.) They assert that Defendants "knew at all relevant times that his representations were false or in reckless disregard for the truth." (*Id*. ¶ 61.) Mr. Lyons did not know that the representations were false, relied on them, had the right to do so, and "suffered substantial damages" as a result. (*Id*. ¶ 62–66.) Plaintiffs have stated a prima facie claim for fraud against William and Judith Clancy and the Clancy Company.

Plaintiffs also assert a claim for consumer fraud against the same defendants. The Arizona Consumer Fraud Act, A.R.S. § 44-1521, et seq., is "much broader in its scope" than common-law fraud. *Lorona v. Arizona Summit Law Sch.*, LLC, 188 F. Supp. 3d 927, 933 (D. Ariz. 2016). A consumer may bring a private right of action against a violator of the Consumer Fraud Act upon a showing of "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342 (Ct. App. 1983); A.R.S. § 44-1521. "Merchandise" includes "intangibles" and "services," and has been interpreted broadly by Arizona courts. *See* A.R.S. § 44–1521(5); *Villegas v. Transamerica Fin. Servs., Inc.*, 147 Ariz. 100, 102 (Ct. App. 1985).

The Complaint states that these defendants made false representations to Plaintiffs, including that they would invest money in the strip center. In making these representations, Defendants "employed an unlawful practice, used deceptions, deceptive acts or practices, frauds, false pretenses, false promises, misrepresentations, and/or concealment, suppressions, and/or omissions, in connection with their investment services." (Doc. 1. ¶¶ 53–54.) Plaintiffs relied on these assertions and have suffered damages as a result. Based on these allegations, Plaintiffs have also stated a prima facie case of consumer fraud.

### d.     Civil Conspiracy

Plaintiffs also seek punitive damages on their claim for civil conspiracy against William Clancy, Jere Clancy, and the Clancy Company.[4] A civil conspiracy requires that "two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (citation omitted). A civil conspiracy is not an independent tort, but instead "requires an underlying tort which the alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 545 (Ct. App. 2000).

The Complaint states that William Clancy, Jere Clancy, and the Clancy Company "conspired and agreed to engage in a scheme to obtain the Inheritance from [Mr. Lyons] by fraudulent means." (Doc. 1 ¶ 69.) It asserts that they "knowingly aided one another to commit the unlawful acts" and that, as a result, Plaintiffs have "suffered substantial damages" in an amount not less than $130,000. (Doc. 1 at 10.) Based on these allegations, Plaintiffs have stated a claim for civil conspiracy.

### e.     Aiding and Abetting

Plaintiffs also allege aiding and abetting against the Clancy Company and Jere Clancy.[5] "Arizona recognizes aiding and abetting as embodied in Restatement [(Second) of Torts] § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 38 P.3d 12, 23 ¶ 31 (Ariz. 2002). *See also* Restatement (Second) of Torts § 876 cmt. a (1977) ("Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts."). An entity can be liable for aiding and abetting. *See Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 491 (Ct. App. 2008).

Plaintiffs allege that William Clancy committed fraudulent acts as part of a scheme

---

[4] Although Plaintiffs assert the civil conspiracy claim against Jere Clancy, they do not request damages from him. (Doc. 20 at 3.)
[5] Plaintiffs also do not request damages from Jere Clancy on the aiding and abetting claim.

to defraud them. Jere Clancy and the Clancy Company knew that the conduct was fraudulent, and substantially assisted by encouraging William Clancy to solicit the Investment Services Agreement and by misappropriating Mr. Lyons's funds. (Doc. 1 ¶ 74–76.) As a result, Plaintiffs "suffered substantial damages." (*Id.* ¶ 77.) Based on these allegations, Plaintiffs have stated a claim for aiding and abetting against the Clancy Company and Jere Clancy.

### f. Civil Racketeering

Plaintiffs also assert a claim against the Clancy Company and Ole Gray Mare under Arizona's civil racketeering statute, A.R.S. 13-2314.04. That statute provides, in relevant part:

> A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of § 13–2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation.

A.R.S. 13-2314.04(A). "Racketeering," in relevant part, is defined as "any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred . . . and that would be punishable by imprisonment for more than one year." A.R.S. § 13-2301(D)(4)(b). A "pattern of racketeering activity" means that there must be at least two related and continuous acts of racketeering. A.R.S. § 13-2314.04(T)(3); *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 198 Ariz. 149, 152, ¶ 12 (App. 2000).

Here, Plaintiffs allege that William Clancy's activity was "unlawful," and that Defendants "performed, authorized, requested, commended, ratified or recklessly tolerated" the unlawful conduct, but do not assert that any defendant engaged in conduct punishable by imprisonment.[6] (*Id.* ¶ 84.) Plaintiffs have not stated a civil racketeering claim

---

[6] Plaintiffs' supplemental briefing states, "If Mr. Clancy was a licensed securities broker, he would be looking at jail time." (Doc. 19 at 4.) However, this statement does not appear

- 12 -

under Arizona law. (Doc. 1 ¶¶ 79–86.)

### g. Constructive Trust

Plaintiffs also seek a constructive trust on any property or funds held by Defendants that are "traced to and derive from" Mr. Lyons's inheritance funds. (Doc. 1 ¶¶ 99-101.) A constructive trust is an equitable remedy, rather than a separate cause of action, under Arizona law. *See In re Allied Gen. Agency*, 229 B.R. 190, 195 (D. Ariz. 1998). The Court will address this request in the context of appropriate remedies.

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp.*, 438 F. Supp. 2d at 1071. In contrast to the other allegations in a complaint, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Housing of Marin*, 285 F.3d at 906. A district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

Here, Plaintiffs seek $126,260.00 in compensatory damages and a total of $125,000.00 in punitive damages, a constructive trust in the amount of $126,260.00, and attorney's fees and costs. As discussed below, the Court will award the requested compensatory damages in full and the punitive damages in part, and deny the request for a constructive trust, attorney's fees, and costs.

Upon review of the *Eitel* factors, Plaintiffs are entitled to default judgment on Plaintiffs' claims for breach of contract, breach of fiduciary duty, fraud and consumer fraud, civil conspiracy, and aiding and abetting.

### D. Remedies

The Court now turns to the matter of remedies. Plaintiffs seek compensatory damages, punitive damages, a constructive trust, attorney's fees, and taxable costs.

---

in the Complaint and is not a sufficient allegation; nowhere is Mr. Clancy alleged to be a securities broker.

### 1. Compensatory Damages

Plaintiffs seek $126,260.00 in compensatory damages against William and Judith Clancy and the Clancy Company, jointly and severally, for breach of contract, and against Ole Gray Mare for breach of fiduciary duty. (Doc. 20 at 2.) They assert that after Defendants credited "a few payments," the outstanding principal amount is $126,260. (Doc. 19 at 5.) The Court finds that, based on Plaintiffs' claims for breach of contract and breach of fiduciary duty, Plaintiffs are entitled to $126,260 in compensatory damages.[7]

### 2. Punitive Damages

Plaintiffs also seek $25,000 in punitive damages against William and Judith Clancy and the Clancy Company, jointly and severally, for their fraud and consumer fraud claims. In Arizona, "punitive damages are not recoverable in every fraud case, even though fraud is an intentional tort." *Rawlings v. Apodaca*, 151 Ariz. 149, 162 n.8 (1986). Instead, "every case must be based on its own facts and the standard of aggravated, wanton, reckless or malicious intentional wrongdoing." *Dawson v. Withycombe*, 216 Ariz. 84, 112, 163 P.3d 1034, 1062 (Ct. App. 2007). Punitive damages are also permitted for violations of the Consumer Fraud Act "where the wrongdoer's conduct is wanton or reckless, shows spite or ill will or where the conduct demonstrates a reckless indifference to the interests of others." *Holeman v. Neils*, 803 F. Supp. 237, 242–43 (D. Ariz. 1992).

Here, the Complaint states that William Clancy and the Clancy Company intentionally acted with an "evil hand" and "guided by an evil heart" with the clear intent to "injure, defraud, or deliberately interfere" with Mr. Lyons's legal rights. (Doc. 1 ¶¶ 57, 67.) Based on these and other allegations in the Complaint, the Court finds that punitive damages are appropriate for these claims. *Sandpiper Resorts Dev. Corp. v. Glob. Realty Investments, LLC*, 904 F. Supp. 2d 971, 986–87 (D. Ariz. 2012) ("The court agrees with plaintiffs that the defaulted defendants have conceded liability for punitive damages . . . by virtue of their default.").

---

[7] Plaintiffs also seek compensatory damages based on their claims for breach of the duty of good faith and fair dealing, negligent misrepresentation, consumer fraud, and fraud. (Doc. 20 at 3.) Because the Court awards compensatory damages pursuant to the breach of contract and breach of fiduciary duty claims, it need not reach these claims.

In determining the amount of punitive damages, there is "no exact monetary standard" in Arizona. *Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 322 (Ct. App. 1984). Punitive damages are "for the purpose of punishing the wrongdoer and deterring others from the same sort of conduct." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 424 (1988*).* Factors to be considered are the wealth of the defendant against whom punitive damages are to be awarded, the reprehensibility of the defendant's actions, and an appropriate relationship to the amount of compensatory damages. "A rule of thumb applicable in at least some cases limits punitive damages to more than three times the compensatory damages." *Sandpiper Resorts Dev. Corp.*, 904 F. Supp. 2d at 987.

The Court will grant Plaintiffs' request for $25,000 in punitive damages for the fraud claims. Although the Court is without knowledge of Defendants' financial status, the aims of punishment and deterrence are warranted here, and a $25,000 punitive damages award is appropriate in scope as compared with the $126,260.00 compensatory damages award.

Plaintiffs also seek $25,000 in punitive damages for their civil conspiracy claim. (Doc. 20 at 3.) Plaintiffs have not provided any authorities indicating that punitive damages are appropriate for a civil conspiracy claim, and the Court has found none. Further, the damages that a plaintiff may recover for a civil conspiracy claim are not for "the conspiracy itself but the injury to the plaintiff produced by specific overt acts." *Perry v. Apache Junction Elem. Sch. Dist. No. 43 Bd. of Trs.*, 20 Ariz. App. 561, 564 (1973). Here, in light of the $126,260.00 compensatory damages award, plus the lack of authority indicating that punitive damages are appropriate, the Court will deny Plaintiffs' request for punitive damages on their civil conspiracy claim.

Plaintiffs also seek $25,000 in punitive damages against the Clancy Company for the aiding and abetting claim. Punitive damages may be imposed in aiding and abetting cases, including in the commercial context. *See Sec. Title Agency*, 219 Ariz. at 499 (Ct. App. 2008) ("We have no reason to believe that these purposes are served any less when applied to conduct in the marketplace than in other contexts."). Here, Plaintiffs' punitive

1 damages request is based on the Clancy Company's knowledge of and substantial
2 assistance to William Clancy for his purportedly fraudulent scheme. (Doc. 75–77.) The
3 Complaint further states that the Clancy Company "intentionally engaged in a pattern of
4 aggravated and outrageous conduct with an evil hand guided by an evil mind." (*Id*. ¶ 78.)
5 The Court will grant $25,000 in punitive damages for Plaintiffs' aiding and abetting claim.
6 Lastly, Plaintiffs seek $25,000 in punitive damages for the civil racketeering claim.
7 Because Plaintiffs have not stated a claim for civil racketeering, this request is denied.

### 3. Constructive Trust

Plaintiffs also seek a "constructive trust and equitable lien" against the property of Defendants Ole Gray Mare, the Clancy Company, and Jere Clancy, jointly and severally, in the amount of $126,260.00. (Doc. 20 at 3.) The Complaint states that "this Court should impose a constructive trust or equitable lien on any property or funds" held by these defendants that "are traced to and derive from the Inheritance." (Doc. 1 ¶ 101.)

A constructive trust is an equitable remedy that may be imposed "whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." *Harmon v. Harmon*, 126 Ariz. 242, 244 (Ct. App. 1980). A constructive trust prevents the title holder from continuing to reap the benefits of ownership. *See In re Rose's Estate*, 108 Ariz. 101, 104 (1972). The plaintiff must have an "equitable interest in the property wrongly held by the defendant to give rise to the defendant's duty to convey that property to the plaintiff." *Id*.

In Arizona, "[e]ssential to the imposition of a constructive trust . . . is the identification of specific property, or res, in which the claimant has a direct interest." *In re Allied Gen. Agency*, 229 B.R. at 196. Before imposing a collective trust on assets, "courts require the aggrieved party to trace his or her interest in the assets." *Id*.; *see also Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 286, 697 P.2d 674, 679 (1985). It is this "tracing requirement which distinguishes a constructive trust from a general claim for damages." *In re Allied Gen. Agency*, 229 B.R. at 196. *See also Amtitle Tr. Co. v. Fitch*, 25

Ariz. App. 182, 185 (1975) ("The failure of [plaintiff] to demonstrate that it was [h]er money which passed through the hands of the title companies must therefore defeat her claim for a constructive trust against the title companies."). A party's failure to trace his or her interest does not foreclose all relief, however; "he or she may still have a claim for damages against the putative wrongdoer." *In re Allied Gen. Agency*, 229 B.R. at 196.

Here, Plaintiffs' request for "any property or funds" that are "traced to and derive from the Inheritance," is not adequately specific. (Doc. 1 ¶ 101.) The tracing requirement "is not dispensed with lightly in Arizona." *In re Allied Gen. Agency*, 229 B.R. at 196. Further, the Court finds that Plaintiffs will be adequately compensated by the awards of compensatory and punitive damages. Accordingly, the Court will deny Plaintiffs' request for a constructive trust.

### 4. Attorney's Fees and Costs

Plaintiffs also state, in passing, that they are owed "attorney's fees and costs," and their proposed order awards "attorney's fees in the amount of $6,500.00 and taxable costs in the amount of $852.00." (Doc. 20 at 3.) Plaintiffs do not provide any justification for these requests. Rule 54.2(c) of the Local Rules of Civil Procedure requires a party seeking fees and costs to include (1) "the applicable statutory or contractual authority upon which the movant seeks an award of attorneys' fees and related non-taxable expenses," including a statement as to the claims the moving party prevailed on in the action; (2) the relevant legal authority supporting the award of attorney's fees and costs; and, (3) the reasonableness of the requested award, listing 13 non-exhaustive factors. LRCiv 54.2(c). As Plaintiffs have not included this information, the request for fees is denied without prejudice. Plaintiffs may move for an award of attorney's fees in a manner provided by applicable federal and local rules.

Further, under Fed. R. Civ. P. 54(d)(1), "costs—other than attorney's fees—should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise[.]" To recover their taxable costs, Plaintiffs may file a Bill of Costs on the form provided by the Clerk of the Court within 14 days after entry of judgment as

required by LRCiv 54.1(a). Plaintiffs' requests for costs are also denied without prejudice.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Application for Default Judgment (Doc. 15) is granted in part.

**IT IS FURTHER ORDERED** awarding Plaintiffs $126,260.00 in compensatory damages against Defendants William and Judith Clancy; Clancy Company, PLLC; and Ole Gray Mare, LLC, jointly and severally.

**IT IS FURTHER ORDERED** awarding Plaintiffs $25,000 in punitive damages for their fraud and consumer fraud claims against Defendants William and Judith Clancy and the Clancy Company, PLLC, jointly and severally.

**IT IS FURTHER ORDERED** awarding Plaintiffs $25,000 in punitive damages for their aiding and abetting claim against Defendant Clancy Company, PLLC.

**IT IS FURTHER ORDERED** denying the Plaintiffs' Application (Doc. 15) in all other respects.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 8th day of January, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge